UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

MARICELA RAMIREZ

              Plaintiff,

     v.

MELANIE PARKER, M.D., STEPHANIE
ANDERSON, M.D., LEGACY GOOD
SAMARITAN MEDICAL CENTER;
LEGACY EMANUEL MEDICAL
CENTER; LMG NORTHEAST; DOES 1-
100,

              Defendant.

No. 3:13-cv-01772-AC

FINDINGS AND
RECOMMENDATION

Judge ACOSTA, Magistrate Judge:

*Introduction*

    Plaintiff Maricela A. Ramirez ("Ramirez") alleges that Defendants Melanie Parker, M.D.

("Dr. Parker"), Stephanie Anderson, M.D. ("Dr. Anderson"), Legacy Good Samaritan Medical

Center ("Good Samaritan"), Legacy Emanuel Medical Center ("Legacy Emanuel"), Legacy Medical

FINDINGS & RECOMMENDATION - 1                        [RMD]

Group Northeast ("LMG Northeast"), and Does 1 to 100 (collectively "Defendants") committed medical malpractice and discriminated against Ramirez on the basis of her Mexican-American heritage and physical disability. Defendants move for summary judgment on each of Ramirez's claims. Ramirez responded to Defendants motion, but also filed a motion for leave to amend. Her Proposed Amended Complaint ("PAC") omits several claims stated in her previous complaints and adds a new claim under 42 U.S.C. § 1981. The court should grant in part and deny in part Defendants' Motion for Summary Judgment and deny Ramirez's Motion for Leave to Amend.

*Factual Background*

Ramirez is a citizen of Oregon with her principal place of residence in Portland, Oregon. Her claims arise out of medical treatment she received from Defendants between October 2009 and April 2012. Ramirez alleges she was given insufficient medical care and was treated disparately because of her race and disability.

On October 7, 2009, Ramirez went to the Legacy Emanuel emergency room complaining of "itching and burning throughout her entire body, nausea, intolerance to most foods, severe abdominal pain, severe back pain, extreme weakness, etc." (First Am. Compl. at 5.)[1] Ramirez alleges the emergency-room staff was rude to her, and she was required to wait more than five hours without seeing a doctor while others who came in after her were admitted almost immediately. (First Am. Compl. at 5.) Ramirez does not allege whether she eventually saw a physician on that day, but telephoned the Legacy Emanuel patient relations department the following day to express her belief

---

[1]Although the First Amended Complaint does not constitute "evidence" when analyzing a motion for summary judgment, Ramirez submitted little evidence in support of her claims and is pursuing her claims pro se. Thus, the court cites to Ramirez's First Amended Complaint only to give background for Ramirez's claims.

FINDINGS & RECOMMENDATION - 2                                    [RMD]

that she had been discriminated against on the basis of race and disability. (First. Am. Compl. at 5-6.)

On October 8, 2009, Ramirez sought medical attention at Good Samaritan, where she again complained of food intolerance, nerve irritation, body pain, and muscle weakness. (First Am. Compl. at 6.) Her doctor ordered blood tests, which came back normal. (First Am. Compl. at 6.) The attending emergency room doctor told Ramirez that the tests came back negative and released her with instructions to consume a primarily liquid diet to calm her digestive system. (First Am. Compl. at 6.) Ramirez alleges that she in fact suffered from organ failure and cancer and the attending emergency-room physician concealed her true diagnosis. (First Am. Compl. at 6.)

On July 26, 2011, Ramirez returned to Good Samaritan emergency room, where she was examined by Dr. Parker. (First Am. Compl. at 7.) Dr. Parker ordered blood tests, which again came back negative for any problem. (First Am. Compl. at 7.) Ramirez alleges Dr. Parker and Good Samaritan nurses "wouldn't listen to [her] and intentionally concealed that Plaintiff suffered [from] kidney failure, other internal organs failure, nerve damage and cancer and undermined her condition." (First Am. Compl. at 7.)

On April 25, 2012, Ramirez consulted with Dr. Anderson at LMG Northeast for symptoms similar to those she experienced at previous doctor visits. (First Am. Compl. at 8.) Ramirez alleges Dr. Anderson treated her rudely, "mocked her condition," and "intentionally covered up that Plaintiff had . . . organs failure, nerve damage and cancer and denied her adequate medical care." (First Am. Compl. at 8.) According to Ramirez, Defendants intentionally provided her medical care which fell below professional standards because she is a racial minority and suffers from a disability.

### Procedural Background

Ramirez filed her original complaint on October 4, 2013, alleging medical malpractice, race

discrimination under Title VII of the Civil Rights Act of 1964, and disability discrimination under section 504 of the Rehabilitation Act and Title III of the Americans with Disabilities Act ("ADA"). On December 31, 2013, Ramirez filed her First Amended Complaint, which also states claims for medical malpractice, race discrimination, and disability discrimination. Although Ramirez groups her claims together into only two causes of action, because she is a pro se plaintiff, the court will construe her claims liberally as asserting four separate causes of action.[2] *Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004) (construing liberally a pro se plaintiff's claims). Further, because her claims are based on four distinct incidents of medical treatment between October 2009 and April 2012, the court construes Ramirez to state four counts under each cause of action.

Defendants answered Ramirez's First Amended Complaint and moved for summary judgment. Shortly thereafter, the court issued and mailed Ramirez, who is appearing pro se, a summary judgment advice notice (the "Notice"). The notice advised Ramirez that:

> When a party you are suing makes a motion for summary judgment that is properly supported by declarations (or other sworn testimony), you cannot simply rely on what your complaint says. Instead, you must set out specific facts in depositions, documents, electronically stored information, affidavits or declarations, stipulations, admissions, interrogatory answers, or other materials, as provided in Rule 56(c), that contradict the facts shown in the defendants' declarations and documents and show that there is a genuine dispute of material fact for trial. If you do not submit your own evidence in opposition, summary judgment, if appropriate, may be entered against you. If summary judgment is granted, your case will be dismissed and there will be no trial.

(Dkt. No. 52.)

Ramirez responded to Defendants' motion and argued Defendants were not entitled to

---

[2]Ramirez filed a Motion for Appointment of Counsel in January 2014, and the court made five attempts to appoint pro bono counsel to represent her.  (Dkt. Nos. 19, 24, 29, 34, 42.) However, all five of the court's appointments declined to represent Ramirez due to caseload and scheduling conflicts.  (Dkt. Nos. 23, 26, 31, 36, 44.)

summary judgment, but nonetheless moved for leave to amend her claims. Her PAC, which is attached as an exhibit to her Motion for Leave to File Second Amended Complaint ("Motion for Leave to Amend"), retains her claims for medical malpractice, omits her previously asserted claims under the Civil Rights Act, section 504 of the Rehabilitation Act, and the ADA, and adds a claim for race discrimination under 42 U.S.C. § 1981.

*Legal Standards*

I.  Motion for Summary Judgment

A court should grant a motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The moving party bears the burden of establishing that no issue of fact exists and that the nonmovant cannot prove one or more essential elements of a claim or defense. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). If the movant meets his burden, the nonmovant must "go beyond the pleadings [ ] by her own affidavits . . . [to] designate specific facts showing that there is a genuine issue for trial." *Id.* (internal quotation marks omitted). Conclusory allegations which are unsupported by factual material such as affidavits and documentary evidence are insufficient to defeat a motion for summary judgment. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).

On summary judgment, the court is bound to view all facts in a light most favorable to the nonmovant and must draw all justifiable inferences in the nonmovant's favor. *Narayan v. EGI, Inc.*, 616 F.3d 895, 899 (9th Cir. 2010). Further, where the nonmoving party to a motion for summary judgment is a pro se litigant, the court must "construe liberally the filings and motions." *Thomas v. Ponder*, 611 F.3d 1144, 1150 (9th Cir. 2010).

FINDINGS & RECOMMENDATION - 5                                          [RMD]

## II.  Motion for Leave to Amend

Under Rule 15 "a party may amend its pleadings only with the opposing party's written consent or the court's leave."  The court should "freely give leave when justice so requires."  FED. R. CIV. P. 15.  However, the court need not grant leave to amend where the amendment "(1) prejudices the opposing party; (2) is sought in bad faith; (3) produces an undue delay in litigation; or (4) is futile."  *AmerisourceBergen Corp. v. Dialysist West, Inc.*, 465 F.3d 946, 951 (9th Cir. 2006).  Futility can, by itself, justify denial of a motion for leave to amend.  *Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995).  Amendment is futile "only if no set of facts can be proved . . . that would constitute a valid and sufficient claim or defense."  *Miller v. Rykoff-Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1988).

### *Discussion*

Two motions are before the court, one by each side.  First, the court will determine whether Defendants are entitled to summary judgment on the claims stated in Ramirez's First Amended Complaint.  Second, the court will determine whether Ramirez may have leave to amend her complaint.

## I.  Defendants' Motion for Summary Judgment

Defendants move for summary judgment on all of Ramirez's claims.  Ramirez defends the merits and procedural propriety of her claims.  In addition, Ramirez asks the court to defer ruling on Defendants' motion for summary judgment to allow her to complete discovery and obtain expert evidence.

### A. *Ramirez's request to Defer Ruling and Complete Discovery*

Ramirez asks the court to delay ruling on the merits of Defendants' Motion for Summary

Judgment until discovery is complete. Under Rule 56(d), "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition" to a motion for summary judgment, the court may defer ruling on the motion or allow additional time to complete the discovery necessary to respond to the movant's arguments. Ramirez moved separately to delay resolution of Defendants' summary judgement motion in her Motion to Modify the Summary Judgment under advisement date (Dkt. No. 57).

Ramirez had ample time to complete discovery in this case, but failed to use the time provided. Ramirez filed her suit on October 4, 2013, and in a March 27, 2014 minute order, the court ordered that discovery be completed by July 28, 2014. Ramirez had almost ten months to serve Defendants with interrogatories, requests for production, and deposition requests. However, there is no evidence Ramirez made any effort to conduct discovery before discovery deadlines lapsed; in fact, she admitted at oral argument that she had not provided Defendants with any discovery requests within the discovery period. Further, Ramirez produced no evidence that her efforts would yield discoverable material were the court to grant her additional time in which to conduct discovery.

Moreover, this is not the first case in which Ramirez has attempted to defer and delay proceedings. In two cases Ramirez filed in the Western District of Washington, she made similar motions to stay, both of which were denied for lack of evidence entitling Ramirez to a stay. Motion to Stay, *Ramirez v. Chow et al.*, Case No. 3:12-cv-05630 JRC (W. D. Wash. June 13, 2013) ECF Nos. 62, 65; Motion to Stay by Plaintiff Maricela Ramirez, *Ramirez v. Hart*, 3:13-cv-05873-RJB (W. D. Wash. March 25, 2014), ECF No. 24 at 1. The record in both of these cases shows Ramirez did not engage in discovery, as the only evidence she presented in opposition to Defendants' motions for summary judgments in those cases were her medical records, which were in her possession

FINDINGS & RECOMMENDATION - 7                                      [RMD]

before filing suit. Response to Motion for Summary Judgment, *Ramirez v. Chow et al.*, Case No. 3:12-cv-05630 JRC (W. D. Wash. May 13, 2013) ECF No. 49; Response to Motion for Summary Judgment, *Ramirez v. Hart*, 3:13-cv-05873-RJB (W. D. Wash. May 16, 2014) ECF No. 36. Ultimately, the court granted summary judgment for defendants in both of those cases. Ramirez has repeatedly filed lawsuits, failed to engage in any meaningful discovery, and then sought to delay proceedings without evidence to support her requests. Without evidence supporting her request, the court denies Ramirez's motion to delay ruling on Defendants' Motion for Summary Judgment.

   *B. Medical Malpractice*

   Ramirez alleges she received substandard medical care from one or more defendants during medical appointments on October 7, 2009, October 8, 2009, July 26, 2011, and April 25, 2012. Defendants contend they are entitled to summary judgment on each claim because: (1) three of Ramirez's four claims are barred by the statute of limitations; and (2) Ramirez cannot prove at least one essential element to her malpractice claims. The court agrees with Defendants.

   1. Statute of Limitations

   Defendants first argue that three of Ramirez's four medical malpractice claims are barred by Oregon's two-year statute of limitations. In Oregon, "[a]n action to recover damages for injuries to the person arising from any medical, surgical or dental treatment . . . shall be commenced within two years from the date when the injury is first discovered" or should have been discovered. OR. REV. STAT. § 12.110(4). Further, under to the common-law "discovery rule," the limitations period does not commence until the Plaintiff knows or should know of the causal relationship between his or her injury and the Defendant's conduct. *Berry v. Branner*, 245 Or. 307, 308 (1966). However, regardless of when, or if, the Plaintiff discovers her injury, a medical malpractice claim must be

"commenced within five years from the date of the treatment, omission or operation upon which the action is based." OR. REV. STAT. § 12.110(4).

The four instances of treatment which Ramirez claims fell below the standard of professional care were: (1) an October 7, 2009, visit to Legacy Emanuel; (2) an October 8, 2009, visit to Good Samaritan; (3) a July 26, 2011, appointment with Dr. Parker at Good Samaritan; and (4) an April 25, 2012, appointment with Dr. Anderson at LMG Northeast. Ramirez claims that on all four occasions, Defendants failed to diagnose and "intentionally concealed" her health problems, "intentionally refused [her] appropriate medical care," and otherwise provided substandard levels of medical care. (Response at 6, 7.) Defendants' actions, Ramirez contends, not only caused organ failure and cancer, but have also rendered it "impossible for Plaintiff to obtain [a] diagnosis for" her ailments. (Resp. at 6-7.)

By her own allegations, it is clear Ramirez was dissatisfied with the adequacy of her medical care during, and immediately following, the four instances of care which give rise to her claims. She knew or should have known of her alleged injury and the causal nexus between Defendants' actions and her alleged injury at the time the treatment occurred; thus, there was no gap between Ramirez's treatment and the start of the limitations period. Ramirez filed her lawsuit on October 4, 2013, so the limitations had expired with respect to the treatment she received on October 7, 2009, October 8, 2009, and July 26, 2011. Only the treatment by Dr. Anderson on April 25, 2012, falls within the limitations period and may form the basis of a claim.

Ramirez argues the court should equitably toll the statute of limitations and find all four of her claims were timely brought. Under the doctrine of equitable tolling, the court may toll the statute of limitations "when the plaintiff is prevented from asserting a claim by wrongful conduct on the part

of the defendant, or when extraordinary circumstances beyond the plaintiff's control made it impossible to file a claim on time." *Stoll v. Runyon*, 165 F.3d 1238, 1242 (9th Cir. 1999). Wrongful conduct on the part of the Defendants could include fraud, misrepresentation, or active concealment of the fact or causes of Plaintiff's injury. *Avagyan v. Holder*, 646 F.3d 672, 679 (9th Cir. 2011). Plaintiff bears the burden of demonstrating the propriety of tolling the limitations period. *Miranda v. Castro*, 292 F.3d 1063, 1065 (9th Cir. 2002).

Ramirez contends the court should toll the two-year statute of limitations for two reasons. First, she argues Defendants committed fraud, which concealed her true injuries. Second, she argues that her health problems constitute "extraordinary circumstances" which have prevented her from timely filing her claims and justify tolling the statute of limitations. Ramirez fails to carry her burden of proof. First, Ramirez introduces no evidence which shows Defendants committed a fraud, misrepresentation, or concealment with respect to her medical diagnoses. In addition, Ramirez fails to allege or present evidence showing that Defendant's "fraud" prevented her from discovering her injury or filing her lawsuit. Second, and perhaps most importantly, Ramirez fails to produce any evidence that she has organ failure, cancer, or any other chronic health problem which prevented her from pursuing her claims in a timely manner. In fact, the medical records Ramirez submitted as "attachments" to her Response in Opposition contradict her claims of chronic health problems. Although some more recent records indicate she suffers from a low red-blood-cell count and low diastolic blood pressure, a medical opinion written in March 2010 by a San Francisco doctor, Amiesha Panchal, specifically provides, "[w]e reiterated that she does not have kidney failure and that her symptoms may be caused by a GI or GU tract problem . . . ." (Response Ex. 2 at 7, 13-14.)

Therefore, the court should not toll the statute of limitations for Ramirez's medical

malpractice claims. Because only one of Ramirez's allegations of malpractice occurred within two years of the date on which she filed her complaint the court should grant summary judgement on Ramirez's malpractice claims premised on (1) her October 7, 2009 treatment at Legacy Emanuel; (2) her October 8, 2009 treatment at Good Samaritan; and (3) her July 26, 2011 treatment by Dr. Parker at Good Samaritan. However, Ramirez is not time-barred from pursuing her malpractice claim premised on her April 25, 2012 treatment by Dr. Anderson at LMG Northeast.

### 2. The Merits of Ramirez's Malpractice Claims

Defendants contend Ramirez cannot meet her evidentiary burden of proving medical malpractice. In support, they submit the declaration of an expert witness who opined, based on a review of Ramirez's medical records, that Defendants did not provide substandard medical care to Ramirez on any of the four dates alleged in her complaint. Ramirez does not rebut Defendants' expert with one of her own, but claims Defendants have conspired to prevent Ramirez from finding a doctor willing to give her an accurate diagnosis to support her claims.

To prove a claim for medical malpractice in Oregon, the Plaintiff must show: "(1) a duty that runs from the defendant to the plaintiff; (2) a breach of that duty; (3) a resulting harm to the plaintiff measurable in damages; and (4) a causal link between the breach and the harm." *Moser v. Mark*, 223 Or. App. 52, 55-56 (2006). To meet this burden, a plaintiff generally must provide expert testimony. *Tiedmann v. Radiation Therapy Consultants, P.C.*, 299 Or. 238, 246 (1985). The *Tiedmann* court explained:

> Expert testimony is required to establish what the reasonable practice is in the community. The conduct of the defendant-professional is adjudged by this standard. Without such expert testimony, a plaintiff cannot prove negligence. The reason for this rule is that what is reasonable conduct or professionals is not ordinarily within the knowledge of the usual jury.

*Id.* There is, however, an exception to this rule:

> A [party] need not introduce expert testimony if the conduct to be evaluated is within the common knowledge of the layperson. Expert testimony is not required under these circumstances because the jury is capable of appreciating and evaluating the significance of a particular medical event. In such cases, scientific or technical knowledge is not required to determine whether a medical professional met his duty of care.

*Hern v. Intermedics, Inc.*, 210 F.3d 383, at *6 (9th Cir. 2000) (mem.) (citations and internal quotation marks omitted).

Defendants submit the Declaration of Dr. Ruiz, an expert witness who reviewed all of Ramirez's files. Dr. Ruiz notes in his declaration that he is "familiar with the degree of care, skill, and diligence used by ordinary careful physicians in the same or similar circumstances as those presented by Ms. Ramirez in Portland, Oregon or a similar community." (Declaration of David R. Ruiz, MD, FAAFP, In Support of Defendants' Motion for Summary Judgment ("Ruiz Decl.") at ¶ 2.) Further, he opines that, based on his review of Ramirez's medical records, that Defendant's medical treatment of Ramirez "at all times was appropriate and within the applicable standard of care" for physicians. (Ruiz Decl. at ¶ 4-10.)

First, Ramirez claims she need not introduce expert testimony in support of her claim because Defendants' gross violation of the standards of professional care would make it obvious to any layperson that Defendants' duty to her was breached. However, Ramirez does not produce any evidence indicating her medical treatment was so grossly deficient as to dispense with the requirement she produce expert testimony. Ramirez does not produce evidence that even suggests she suffers from kidney failure, other organ failure, or cancer. Without this evidence, the court cannot conclude this case is one where Defendants' breach was so egregious that a layperson could

readily identify a breach of duty. Second, Ramirez argues the court should reject the opinion of Dr. Ruiz because it is fraudulent. She produces no evidence, however, to support her otherwise conclusory and fantastic accusations, nor does Ramirez articulate in what way Dr. Ruiz's declaration constitutes fraud or produce any evidence which contradicts Dr. Ruiz's opinion.

In sum, there is no genuine dispute of material fact, and the unrebutted opinion of Dr. Ruiz shows Defendants are entitled to judgment as a matter of law on Ramirez's remaining medical malpractice claim. Therefore, the court should grant summary judgment in Defendants' favor.

### C. Claims Under the Civil Rights Act of 1964

Ramirez claims Defendants discriminated against her "in a Place of Public Accommodations [sic] on the basis of race under Title VII of the Civil Rights Act of 1964 . . . ." (First Am. Compl. at 18.) Title VII, however, relates to employment discrimination, not discrimination in places of public accommodation. Again, because Ramirez is pro se, the court will construe her claims liberally and presume she intended to plead her claims under Title II, which prohibits discrimination in places of public accommodation.

Defendants argue that, even if Ramirez had specified the correct statutory title under which her claims are brought, her claims would fail because: (1) she failed to meet Title II notice requirements; and (2) Ramirez cannot produce any evidence of racial discrimination in a place of public accommodation.

Under Title II of the Civil Rights Act of 1964 all people are "entitled to the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of any place of public accommodation." 42 U.S.C. § 2000a(a). Places of public accommodation, which include "establishments affecting interstate commerce" as well as hotels, motels, restaurants, movie theaters,

and other similar businesses, may not discriminate against patrons "on the ground of race, color, religion, or national origin." 42 U.S.C. § 2000a(a)-(b). Defendants do not dispute that hospitals and doctors' offices are places of public accommodation, subject to the prohibitions of Title II.

1. Title II Notice Requirements

Defendants first argue that Ramirez cannot succeed on her Title II claims under the Civil Rights Act because she did not satisfy Title II's requirement that a plaintiff give notice to certain state agencies before filing suit. Title II provides:

> In the case of an alleged act or practice prohibited by this subchapter which occurs in a State . . . which has a State or local law prohibiting such act or practice and establishing or authorizing a State or local authority to grant or seek relief from such practice . . . no civil action may be brought under subsection (a) of this section before the expiration of thirty days after written notice of such alleged act or practice has been given to the appropriate State or local authority by registered mail or in person . . . .

42 U.S.C. § 2000a-3(c). Oregon has a separate statute prohibiting discrimination in places of public accommodation, and the Bureau of Labor and Industries ("BOLI") has authority to "take all steps necessary to eliminate and prevent unlawful practices [and] . . . unlawful discrimination." OR. REV. STAT. §§ 659A.403, 659A.800.

Thus, under Title II, Ramirez was required to give BOLI written notice of her intent to sue Defendants thirty days before filing suit. There is no evidence on the record Ramirez did so. She has, thus, failed to comply with the statutory prerequisites to filing a Title II claim for discrimination in a place of public accommodation. Therefore, the court should grant summary judgment in favor of Defendants on Ramirez's Title II claim.

2. Merits of Ramirez's Title II Claims

Even if Ramirez met Title II's notice requirements, Defendants would be entitled to summary

FINDINGS & RECOMMENDATION - 14                                    [RMD]

judgment on the merits of Ramirez's claims. Defendants argue that Ramirez can produce no evidence to support her claim, and submit the Ruiz Declaration in support of their contention. Ramirez does not squarely respond to Defendants' argument, but objects to the credibility of Ruiz's testimony because he was not present during any of the medical treatment which gave rise to her claims.

In his declaration in support, Dr. Ruiz opined that, based on his review of Ramirez's medical records he "did not see any evidence that [Defendants] denied Ms. Ramirez adequate medical care or mistreated Ms. Ramirez because of her Mexican-American race or her alleged disability." (Ruiz Decl. at ¶11.) Dr. Ruiz goes on to explain, "[m]any clinics have interpreters available, as well as Spanish speaking providers, to accommodate situations where language impairs the ability to receive care." Ramirez objects to Dr. Ruiz's declaration on the basis that it is not supported by admissible evidence and his testimony is fraudulent. Further, Ramirez notes that "Dr. Ruiz'[s] testimony lacks credibility because he was not present at the Defendants' hospitals . . . when Plaintiff sought medical care at these places." (Resp. at 17.) No evidence on the record supports Ramirez's contention that Ruiz's declaration is fraudulent, but a question arises whether Dr. Ruiz's opinion is admissible to disprove Ramirez's discrimination claims.

During summary judgment, a party may object to a movant's attempt to prove a fact by demonstrating that the evidence "cited to support or dispute a fact cannot be presented in a form that would be admissible evidence." FED. R. CIV. P. 56(c)(2). Further, Rule 56 provides that "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declaration is competent to testify on the matters stated." The opinion testimony of an expert witness is admissible

if:

> (a) the expert's scientific, technical or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of this case.

FED. R. EVID. 702.  An expert may give opinion testimony only regarding subjects within his or her area of expertise and specialized knowledge.  *See U.S. v. Hayat*, 710 F.3d 875, 900 (9th Cir. 2013) (analyzing whether testimony was inadmissible on grounds that it was outside a witness's expertise).

Dr. Ruiz's states in his declaration that he has "a bicultural and bilingual background that has aided [him] in [his] care and treatment of Hispanic patients."  He also declares that he is "familiar with the degree of care, skill, and diligence used by ordinary careful physicians in the same or similar circumstances as those presented by Ms. Ramirez in Portland, Oregon or a similar community." (Ruiz Decl. at 2.)  In addition, Dr. Ruiz's curriculum vitae, which is attached to his declaration as an exhibit, evidences a lengthy career practicing medicine in the Pacific Northwest.  (Ruiz Decl. Ex. 1.)  Dr. Ruiz's experience and specialized knowledge make him an expert in the field of family medicine and the professional standards which govern that field, but there is no evidence that Dr. Ruiz has scientific, technical, or other specialized knowledge with respect to race or disability discrimination, neither of which subject matter is a field of medicine or a subject of medical expertise.

Regardless, Dr. Ruiz's declaration disproves an essential element of Ramirez's Title II claim. Ramirez alleges in her complaint that Defendants discriminated against her because of her Mexican-

FINDINGS & RECOMMENDATION - 16                                             [RMD]

American heritage.  However, she admits having actually received medical care from Defendants. According to Ramirez, the manner in which Defendants discriminated against her came in the form of their substandard medical care and efforts to conceal her "true diagnosis." Thus, for Ramirez to succeed in her race-discrimination claim, she must necessarily demonstrate Defendants provided her medical care which fell below community professional norms.  As discussed above, Dr. Ruiz testifies in his affidavit that, based on his review of Ramirez's medical records and experience in the field of medicine, Ramirez did not receive inadequate medical care.  Ramirez submits no evidence to rebut Dr. Ruiz's testimony or demonstrate the existence of a genuine issue of material fact. Therefore, because Ramirez cannot prove she received substandard medical care, the court should not grant Ramirez leave to replead her Title II claims.

### D.  Section 504 of the Rehabilitation Act

Defendants next request summary judgment on Ramirez's claims for disability discrimination under Section 504 of the Rehabilitation Act of 1973.  According to Defendants, Ramirez cannot succeed in her Rehabilitation Act claims because: (1) her claim is time-barred by the statute of limitations; (2) the Rehabilitation act does not permit Ramirez to bring suit against real-person defendants in their individual capacities; and (3) Ramirez cannot prove she was discriminated against on the basis of her disability.  Ramirez does not specifically address Defendants' arguments, but maintains the court should toll the statute of limitations and declare all of her claims timely.

Section 504 of the Rehabilitation Act, it is unlawful for any "program or activity" receiving federal financial assistance to discriminate against someone "solely by reason of her or his disability . . . ."  29 U.S.C. § 794(a).  Corporations, partnerships, or other private organizations which are "principally engaged in the business of providing education, health care, housing, social services,

or parks and recreation" are covered by the Rehabilitation Act, and are included in the definition of "programs or activities" receiving federal financial assistance.

    1.  Statute of Limitations

      Defendants argue that Ramirez's claims for discrimination under the Rehabilitation Act are barred by a one-year statute of limitations. The Rehabilitation Act does not specifically identify a limitations period during which a claimant may file suit, but the Supreme Court has held, "[w]hen Congress has not established a time limitation for a federal cause of action, the settled practice has been to adopt a local time limitation as federal law if it is not inconsistent with federal law or policy to do so." *Wilson v. Garcia*, 471 U.S. 261, 266-67 (1985), *superceded on other grounds as recognized in Merrigan v. Affiliated Bankshares of Colo., Inc.*, 775 F. Supp. 1408 (D. Colo. 1991); *see also Douglas v. Calif. Dep't of Youth Auth.*, 271 F.3d 812, 823 n.11 (9th Cir. 2001) (applying a state statute of limitation to a claim brought under section 504 of the Rehabilitation Act). The court, then, must determine which Oregon statute is most analogous to the Rehabilitation Act and apply the statute of limitations governing that law. *Id.*

      The Ninth Circuit has not yet ruled on the question now before the court, but some guidance can be found in several cases decided in this district. In the past, courts have determined that, because claims under the ADA are considered analogous to personal injury claims, so too should claims brought under the Rehabilitation Act. *Plasencia v. Carnevale*, Civil No. 06-1426-AC, 2008 WL 2354423, at *2-3 (D. Or. June 6, 2008) (applying the two-year personal-injury statute of limitations because like claims under the ADA, "[a] claim under the Rehabilitation Act is similarly characterized as a claim for personal injury."), *Thunderbird v. Or. State Dep't of Corr.*, No. CV 08-1404-PK, 2011 WL 2971798, at *3 (D. Or. June 28, 2011) (citing *Plasencia* and applying a two-year

FINDINGS & RECOMMENDATION - 18                         [RMD]

statute of limitations).

However, two more recent cases suggest the law in this area is not as clear as originally thought. In *Clink v. Or. Health and Science Univ.*, the plaintiff filed a claim under the Rehabilitation Act for disability discrimination in the employment context. — F.3d —, 2014 WL 1225210, at \*4-6 (D. Or. March 24, 2014). The court determined OR. REV. STAT. § 659A.142, which governs discrimination on the basis of disability in employment and places of public accommodation, was most analogous to the Federal Rehabilitation Act and applied the one-year statute of limitations articulated in OR. REV. STAT. § 659A.875(1). However, § 659A.875(1) creates a one-year statute of limitations only for civil actions "alleging an unlawful employment practice . . . ." Because the plaintiff in *Clink* brought suit for unlawful employment discrimination, the court applied the appropriate statute of limitations. But here, Ramirez does not allege employment discrimination, so applying the one-year limitation articulated in § 659A.875(1) would clearly contradict the text of that statute.

More analogous facts to this case can be found in *T.L ex rel. Lowry v. Sherwood Charter Sch.*, No. 03:13-CV-01562-HZ, 2014 WL 897123, at \*5-9 (D. Or. March 6, 2014). There, two former students of Sherwood Charter School alleged disability discrimination in a place of public accommodation under the ADA and the Rehabilitation Act. *Id.* at \*1. The court, recognizing the ambiguity in the statute-of-limitations issue, engaged in a lengthy and detailed review of the law governing the Rehabilitation Act's statute of limitations in Oregon. *Id.* at \*5-9. As did the court in *Clink*, the court concluded that OR. REV. STAT. § 659A.142 was the statute most analogous to the Federal Rehabilitation Act, but also determined that the one-year statute of limitations in § 659A.875(1) was inapplicable, as plaintiffs alleged no employment discrimination. *Id.* at \*8. The

FINDINGS & RECOMMENDATION - 19                                    [RMD]

court then held that the Rehabilitation Act was not analogous to Oregon's personal injury statute, but nonetheless applied the two-year statute of limitations contained in OR. REV. STAT. § 12.110(1), which governs the limitations period for personal-injury cases and violations of civil rights. *Id.* at \*8. That section provides a two-year statute of limitation for claims arising out of an "injury to the person or rights of another, not arising on contract, and not specifically enumerated in this chapter . . . ." OR. REV. STAT. § 12.110(1). The court concluded the two-year statute of limitations in § 12.110(1) governed instead of the one-year limitations period contained in § 659A.875(1) "because this is not an employment action." *T.L. ex rel. Lowry*, 2014 WL 897123, at \*9.

The court is persuaded by the reasoning in *Lowry*, and will apply the two-year statute of limitations contained in § 12.110(1). Both the *Clink* and *Lowry* courts are correct that the Oregon statute most analogous to the Rehabilitation Act is OR. REV. STAT. § 659A.142, which provides, "[i]t is an unlawful practice for any place of public accommodation, resort, or amusement . . . , or any person acting on behalf of such place, to make any distinction, discrimination or restriction because a customer or patron is an individual with a disability." That language is similar to the Federal Rehabilitation Act, which prohibits disability discrimination by any organization receiving federal financial grants. Unlike the plaintiff in *Clink*, Ramirez does not allege employment discrimination; thus, the one-year limitations period articulated in § 659A.875(1) is inapposite, and no other limitations period for a claim arising out of § 659A.142 is enumerated elsewhere. Because Ramirez's claim alleges an "injury to the person or rights of another, not arising out of contract, and not especially enumerated" elsewhere, her Rehabilitation Act claims are subject to the two-year statute of limitations articulated in that section.

For Ramirez's claims to be timely, they must have been brought within two-years of the date

FINDINGS & RECOMMENDATION - 20                                          [RMD]

upon which they accrued. Ramirez relies on the same four instances of care in her Rehabilitation Act claims as she does in her malpractice claims which, are discussed *supra*, is also subject to a two-year statute of limitations. Therefore, similar to Ramirez's malpractice claim, the only incident of care that falls within the Rehabilitation Act's limitations period is her April 25, 2012 appointment with Dr. Anderson at LMG Northeast. Thus, the court should grant summary judgment in Defendants' favor with respect to Ramirez's Rehabilitation Act claims arising out of: (1) Ramirez's October 7, 2009, treatment at Legacy Emanuel; (2) her October 8, 2009, treatment at Legacy Good Samaritan; and (3) her July 26, 2011, treatment at Legacy Good Samaritan by Dr. Parker. However, Ramirez's Rehabilitation Act claim premised on her April 25, 2012 appointment with Dr. Anderson at LMG Northeast is not time-barred.

> 2. Ramirez's Rehabilitation Act Claims as Against Defendants in their Individual Capacities.

Defendants argue that, to the extent Ramirez's Rehabilitation Act claims are not time-barred, they are not cognizable as against real-person Defendants acting in their individual capacity. Ramirez does not respond to Defendants' argument.

While the Ninth Circuit has not ruled on the issue, courts in other circuits and courts in this district have concluded that claims under the Rehabilitation Act may not be brought against real-person defendants in their individual capacity. *Becker v. Or.*, 170 F. Supp. 2d 1061, 1067 (D. Or. 2001). As the court explained in *Becker*, the Rehabilitation Act prohibits disability discrimination by any "program or activity" receiving federal financial assistance. *Id.* at 1066-67. Not included in the definition of "program or activity" are real-person defendants acting in their individual capacity. *Id.* at 1067. In addition, the court noted that it would be inappropriate to expand the definition of

"program or activity" to include individuals because "individuals do not 'receive financial assistance for purposes of the Rehabilitation Act.'" *Id.* at 1066, *quoting Grzan v. Charter Hosp. of Nw Ind.*, 104 F.3d 116, 120 (7th Cir. 1997), *abrogated on other grounds as recognized in Amundson ex rel. Amundson v. Wis. Dep't of Health Servs*, 721 F.3d 871, 874 (7th Cir. 2013). On that basis, the *Becker* court dismissed all claims against defendants in their individual capacities, but noted that those same defendants could still be sued in their official capacities. *Becker*, 170 F. Supp. 2d at 1067.

The court's reasoning in *Becker* is persuasive. The Rehabilitation Act was not intended to allow a plaintiff to sue real-person defendants in their individual capacities. Therefore, Ramirez may not pursue her Rehabilitation Act claims against Dr. Parker, Dr. Anderson, and Does 1 to 100 in their individual capacity. However, she may still sue those defendants in their official capacity, so the court must address the merits of Ramirez's allegations against them.

### 3. The Merits of Ramirez's Claim

Defendants contend they are entitled to summary judgment on Ramirez's Rehabilitation Act claims because she cannot produce evidence to prove she experienced discrimination during her April 2012 visit to LMG Northeast. Ramirez does not respond to Defendants' argument except to state in conclusory fashion that her claims for discrimination have merit. As the court has already discussed, the Declaration of Dr. Ruiz indicates Ramirez cannot prove the level of care provided by Defendants fell below professional standards. Because medical malpractice is the only harm from the discriminatory conduct Ramirez alleges, the failure of her malpractice claim is fatal to her discrimination claims. Thus, the court should grant summary judgment in Defendants' favor with respect to Ramirez's claims brought under section 504 of the Rehabilitation Act.

FINDINGS & RECOMMENDATION - 22                                          [RMD]

*E. Americans with Disabilities Act*

Last, Defendants ask the court to grant summary judgment in their favor on all four of Ramirez's claims for disability discrimination under the ADA. According to Defendants they are entitled to summary judgment because: (1) Ramirez's ADA claims are untimely; (2) Ramirez may not recover money damages under Title III of the ADA; and (3) Ramirez cannot prove one or more elements of her claim.

According to Title III of the ADA, "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation . . . ." 42 U.S.C. § 12182(a). "Discrimination" includes denying disabled individuals the benefits of a public accommodation. 42 U.S.C. § 12182(b)(1)(A)(I).

1. Statute of Limitations

Similar to Ramirez's Rehabilitation Act claims, Defendants ask the court to impose a one-year statute of limitations on Ramirez's ADA claims and dismiss them as untimely. Again, Ramirez does not directly respond to Defendants' arguments, but asks the court to toll the statute of limitations if any of her claims are untimely. The court concludes that, like Ramirez' claims under the Rehabilitation Act, the ADA is subject to a two-year statute of limitations which renders three of Ramirez's four ADA claims untimely.

Like the Rehabilitation Act, the ADA does not provide a statute of limitations. Courts must apply the statute of limitations for the state law most analogous to the ADA. Because of the ADA's similarity to Rehabilitation Act, courts in this district have held Oregon's two-year "catch-all" statute of limitations applies to ADA claims for disability discrimination in a place of public

FINDINGS & RECOMMENDATION - 23                                    [RMD]

accommodation. *T.L. ex rel. Lowry*, 2014 WL 897123, at \*5-9.  For example, in *Lowry*, the court analyzed the statute-of-limitations of the ADA and Rehabilitation Act simultaneously. *Id.* Thus, the two-year statute of limitations articulated in § 12.110(1) applies, and renders all but one of Ramirez's ADA claims untimely.  Nonetheless, Ramirez may still pursue her ADA claim based on her April 2012 visit to LMG Northeast.

### 2.   Recovery of Money Damages

Defendants next argue the court should grant Summary Judgment in their favor to the extent she requests money damages.  Under the ADA, private parties or the Attorney General may bring suit for discrimination in a place of public accommodation. 42 U.S.C. § 12188.  When the Attorney General brings suit, the court has the authority to award both injunctive relief and money damages. *Molski v. M.J. Cable, Inc.*, 481  F.3d 724, 730 (9th Cir. 2007).  Although private plaintiffs may be awarded attorney fees, "[m]onetary damages are not available in private suits under Title III of the ADA." *Id.*

Here, Ramirez is a private party and may not recover money damages pursuant to her Title III claim for disability discrimination under the ADA.  However, the court may still award Ramirez injunctive relief.  Although Ramirez is legally foreclosed from recovering money damages, that fact does not entitle Defendants to summary judgment on Ramirez's remaining ADA claim.

### 3.   The Merits of Ramirez's ADA Claim

Defendants move for summary judgment on Ramirez's ADA claims and argue Ramirez cannot provide evidence of discrimination.  Like her claims under the Civil Rights Act and Rehabilitation Act, the only discriminatory conduct alleged in Ramirez's ADA claim is the provision of inadequate medical care.  Dr. Ruiz states in his declaration, which is uncontradicted on the record,

that Ramirez receive medical care which did not fall below prevailing professional norms of care. Without an expert of her own, Ramirez rebut this evidence to create a question whether she received substandard medical care and thus whether Defendants engaged in any discriminatory conduct. Therefore, her remaining ADA claim fails as a matter of law.

In summation, the unrebutted Declaration of Dr. Ruiz shows Ramirez cannot prove she received medical care that fell below prevailing professional standards. Further, Ramirez's remaining claims for race and disability discrimination fail because they are premised only on her contention that Defendants provided her insufficient medical care because of her race and disability. Therefore, all of Ramirez's claims fail as a matter of law, and the court should grant summary judgment in Defendants' favor.

## II. Ramirez's Motion for Leave to Amend

In Response to Defendants' Motion for Summary Judgment, Ramirez filed a Motion for Leave to File Second Amended Complaint ("Motion for Leave to Amend"). In her PAC, Ramirez renews her claims for medical malpractice and adds one or more claims under 42 U.S.C. § 1981. However, Ramirez omits from the PAC claims under the Civil Rights Act, the Rehabilitation Act, and the ADA. Defendants argue the court should deny Ramirez's Motion for Leave to Amend because her proposed amendments are futile.

### A. Medical Malpractice

Defendants argue Ramirez's amended claims for medical malpractice are futile. The court agrees. The court previously determined Defendants are entitled to summary judgment on Ramirez's medical malpractice claims as they are stated in her First Amended Complaint. Ramirez's does not materially amend or modify her medical malpractice claims in her PAC. In fact, the only amendment

FINDINGS & RECOMMENDATION - 25                                    [RMD]

Ramirez makes to her medical malpractice claims is to add the following paragraph:

> 42.  Plaintiff believes that her claim of medical malpractice against Defendants has merit and should be prosecuted in this Court to avoid additional expenses that Plaintiff will incur by having to refile her claim of medical malpractice against Defendants in the State Court. Furthermore, "Federal Courts may also be appropriate for filing malpractice claims where a complete diversity of state citizenship exists, i.e. if the parties to the litigation are from different states, or if a federal question is invoked, such as violation of fundamental constitutional right during the alleged negligent conduct."

(Mot. For Leave to Amend (Dkt. No. 77) Ex. 1 at ¶ 42.)  This conclusory allegation does not materially change her claims for medical malpractice, and would not save her claim in the face of a motion for summary judgment like that the court now recommends be granted in Defendants' favor.  Ramirez's only other addition to the proposed amended complaint which relates to her malpractice claims is on page five of the PAC, where she quotes in its entirety OR. REV. STAT. § 31.610.  This section of the Oregon code relates to the form of damages a court may award in an action for "injury, death, or property damage," and makes no substantive impact on the court's analysis of Ramirez's malpractice claims.  Because Ramirez's amendments proposed in the PAC are futile, the court should deny Ramirez's Motion for Leave to Amend with respect to her claims for medical malpractice.

### B. Claims for Discrimination Under 42 U.S.C. § 1981

Defendants next contend Ramirez's claims under 42 U.S.C. § 1981 are futile.  According to Defendants, Ramirez's PAC fails to state a claim.  The court agrees.

Section 1981 prohibits race discrimination in the making and enforcement of contracts.  42 U.S.C. § 1981(a).  "[T]he term 'make and enforce contracts' includes the making, performance, modification, and termination of contacts, and the enjoyment of all benefits, privileges, terms, and

FINDINGS & RECOMMENDATION - 26                                                    [RMD]

conditions of the contractual relationship." 42 U.S.C. § 1981(b).  To establish a plausible claim

under § 1981, the Plaintiff must allege that "(1) [she] is a member of a racial minority; (2) defendant

had an intent to discriminate on the basis of race; and (3) the discrimination concerned the making

or enforcing of a contract." *Allen v. U.S. Bankcorp*, 264 F. Supp. 2d 945, 952 (D. Or. 2003).

Ramirez's PAC fails to state a claim for race discrimination under § 1981 because she does

not allege any contractual relationship between herself and Defendants.  Ramirez alleges in her PAC

that Defendants "deliberately discriminated against [her] because of her Mexican -American race

. . . ." (Mot. for Leave to Amend Ex. 1 at ¶ 44.)  But nowhere in her complaint does she allege the

existence of a contractual relationship between her and Defendants.  Nor does she allege facts from

which this court could infer the existence of a contractual relationship.  Throughout the PAC,

Ramirez repeatedly alleges that she received medical treatment by one or more Defendants on

October 7, 2009, October 8, 2009, July 26, 2011, and April 25, 2012, but she does not allege the

existence of an offer, acceptance, and mutual consideration which would form a contract.

Further, Ramirez's allegations throughout this lawsuit have been based exclusively on the

physician-patient treatment relationship; her allegations make clear that no contract is involved in

the events giving rise to her claim.  Thus, she cannot properly amend her complaint to add a § 1981

claim because she would contradict her prior allegations.  Because Ramirez fails to allege an element

material to her § 1981 claim, the court should conclude that it is futile.  Because both of the claims

Ramirez states in her PAC would be futile, the court should deny Ramirez's Motion for Leave to

Amend.

## III.  Defendants' Motion for Attorney Fees

At the conclusion of their Motion for Summary Judgment, Defendants request "an award of

FINDINGS & RECOMMENDATION - 27                                      [RMD]

costs, disbursements, and attorney fees incurred in defense of plaintiff's federal claims, as permitted by law . . . ." (Mot. for Summary Judgment at 19.) Ramirez does not respond to or specifically oppose Defendants' request. Because this is the fifth frivolous lawsuit Ramirez has filed, the court should grant Defendants' motion, but defer quantifying the attorney-fee award, as Defendants did not produce the information necessary for the court to determine the amount of fees due.

In their Memorandum in Support of their Motion for Summary Judgment, Defendants mention their request for attorney fees only once. They do so in the conclusion of their motion, and present little justification for making such a request. Instead, they provide a list of four statutory citations which, according to Defendants, entitle them to attorney fees. (Mot. for Summary Judgment at 19.) In their Reply, Defendants cite several more sources of authority pursuant to which this court could grant attorney fees, but make little argument and provide no analysis as to why the court should exercise its discretion in this instance and award them attorney fees.

All three federal statutes under which Ramirez brought suit contain attorney fee provisions. *See* 42 U.S.C. § 2000a-3(b) (Title II of the Civil Rights Act); 29 U.S.C. § 794a(b) (the Rehabilitation Act); 42 U.S.C. § 12205 (the ADA). The language of these three attorney-fee provisions is nearly identical. Each provides, with limited variation, that the court "in its discretion, may allow the prevailing party, other than the Untied States, a reasonable attorney's fee." 29 U.S.C. § 794a(b); *see also* 42 U.S.C. § 2000a-3(b), 42 U.S.C. § 12205. The Supreme Court has declared that, because a private plaintiff cannot recover damages under Title II of the Civil Rights Act or Title III of the ADA, these attorney-fee provisions were intended "not simply to penalize litigants who deliberately advance arguments they know to be untenable but, more broadly, to encourage individuals injured by racial discrimination to seek judicial relief under Title II." *Newman v. Piggie Park Enters., Inc.*,

FINDINGS & RECOMMENDATION - 28                                                [RMD]

390 U.S. 400, 402 (1968) (per curiam).   In the Ninth Circuit, a district court is well within its

authority under these statutes to award attorney fees to a defendant "on the basis of its determination

that [the plaintiff's] action was 'frivolous, unreasonable, or without foundation.'" *Liaosheng Zhang*

*v. Honeywell Intern., Inc.*, 442 Fed. Appx. 288, 289 (9th Cir. 2011).

      The court agrees with Defendants' that Ramirez's lawsuit is frivolous, and as the prevailing

parties in this case, Defendants are entitled to an award of attorney fees.   Although the attorney-fee

provisions in Title II, the ADA, and the Rehabilitation Act are in place primarily to encourage private

enforcement of civil rights statutes, they serve the secondary purpose of "penaliz[ing] litigants who

deliberately advance arguments they know to be untenable . . . ."   *Newman*, 390 U.S. at 402.

Ramirez has filed five lawsuits against a variety of healthcare providers alleging a conspiracy to deny

her adequate medical care for the same alleged health conditions.   In her case most recently predating

this suit, the court granted Defendants summary judgment and warned Ramirez that:

> . . . if she continues to file cases that assert federal question jurisdiction under 28
> U.S.C. § 1331, based upon the same claims that this court has rejected, she may be
> subject to an award of costs and attorney's fees under the relevant statutes, and/or she
> may be subject to sanctions under Fed. R. Civ. P. 11.

*Ramirez v. Hart*, No. C13-5873 RJB, 2014 WL 2170376, at *11 (W. D. Wash May 23, 2014).   After

four unsuccessful lawsuits and a warning by one court that future frivolous suits would result in an

attorney-fee award, Ramirez knew that making the same allegations and arguments in support

thereof would not succeed.   The court's conclusion that Ramirez's lawsuit is frivolous is further

supported by the wholly unsupported, sensational nature of her allegations against Defendants that

they engaged in a vast conspiracy with doctors around the state to deny her adequate medical care.

Ramirez introduced no evidence of such a conspiracy and, further, no evidence she suffers from the

many health ailments alleged in her complaint. Therefore, the court should grant Defendants' Motion for Attorney Fees. Because Defendants failed to supply the court with a fee schedule or information sufficient to quantify their fee award, the court should direct Defendants to file an appropriate fee petition for the court's review and Ramirez's response.

### Conclusion

For the aforementioned reasons, the court should GRANT Defendant's Motion for Summary Judgment (Dkt. No. 48), DENY Defendants' Motion for Attorney Fees (Dkt. No. 48), and DENY Ramirez's Motion for Leave to File Second Amended Complaint (Dkt. No. 77). Further, because Defendants are entitled to summary judgment on all of Ramirez's claims, the court should enter a judgment of dismissal with prejudice.

### Scheduling Order

The above Findings and Recommendation will be referred to a United States District Judge for review. Objections, if any, are due November 21, 2014. If no objections are filed, review of the Findings and Recommendation will go under advisement on that date. If objections are filed, a response to the objections is due fourteen days after the date the objections are filed and the review of the Findings and Recommendation will go under advisement on that date.

DATED this 7th day of November, 2014.

_____

JOHN V. ACOSTA
United States Magistrate Judge

FINDINGS & RECOMMENDATION - 30                                                    [RMD]